52 CCPA

**Application of Anton W. TEDESCO and William F. Richardson.**

**Patent Appeal No. 7319.**

United States Court of Customs and Patent Appeals.

Feb. 4, 1965.

Otis A. Earl, Earl & Webb, Kalamazoo, Mich. (Austin A. Webb, Kalamazoo, Mich., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN and ALMOND, Judges.

ALMOND, Judge.

Tedesco and Richardson appeal from the decision of the Board of Appeals affirming the examiner's rejection under 35 U.S.C. § 103 of appellants' claims 1–8 in their application [1] for "Spring Cushion Assembly and Mats Therefor." No claim has been allowed.

The claimed invention relates to a mat or wire-reinforced burlap sheet used in a seat cushion to keep the padding material separated from the springs. The mat is placed upon bowed zigzag springs 12 of a seat cushion and is substantially represented by the drawings reproduced below:

Fig. 1.

Fig. 2.

Fig. 3.

Fig. 7.

1. Serial No. 790,570, filed March 16, 1959.

Straight reinforcing parallel wires 19 are woven through burlap sheet 18 with their ends tightly bent over connecting cords 21. The length of the wires may vary, so that the reinforced area of the sheet may correspond to the upper surface of an automobile seat cushion having curved ends. Clips are used to fasten cords 21 to top border wire 13 of the spring assembly. The ends of wires 19 overlie the sheet. Padding 16 is placed upon the secured mat and the upholstery is secured thereupon.

Claim 1 is reproduced as illustrative:

"An upholstery supporting mat for use in spring cushion assemblies comprising a front top member and end top member curvedly merging into the front top member, and a plurality of laterally spaced arcuately curved zigzag spring elements extending from front to rear of the cushion, the mat being supportedly disposed upon the spring element and comprising substantially rectangular sheet of fabric of a length corresponding approximately to the length of the cushion assembly and of a width corresponding approximately to the length of said spring elements, a plurality of spaced parallel wire strands extending longitudinally of the cushion assembly and disposed in transverse bridging relation to said zigzag spring elements and having major central portions thereof woven into the said sheet of fabric with *portions of the strands of substantial length at both ends thereof in non-interwoven but in overlying supported relation to said fabric sheet,* a plurality of said strands being of varying length with the length thereof increasing from the front rearwardly of the mat, and pliant cords to which *the non-interwoven ends of the strands* are fixedly connected and held in spaced parallel relation to each other, such *unwoven end portions* of the strands and said connecting cords therefor being in superimposed supported re-

lation to the fabric with the ends of the fabric projecting beyond the said cord connected ends of the strands." (Emphasis added.)

Appellants rely on features of the reinforcing mat in the claims for patentability. Each claim calls for parallel wire strands interwoven with a sheet of fabric, and "pliant cords" or "flexible end members" connected to the ends of the strands. With the exception of 4 and 6, the claims call for "a plurality of said strands being of varying length with the length thereof increasing from the front rearwardly of the mat." This feature relates to adaptation to a curved end spring assembly. Claims 1–6 call for "portions of the strands of substantial length at both ends thereof in non-interwoven but in overlying supported relation to said fabric sheet" while claims 7 and 8 more broadly call for the strands "having at least the major portion thereof interwoven with the fabric." In claims 1–4, 7 and 8 the mat is "supportedly disposed upon the spring element."

The references relied upon below are:

| Young (1) | 2,260,596 | October 28, 1941 |
| Young (2) | 2,283,116 | May 12, 1942 |
| Shockey | 2,423,159 | July 1, 1947 |
| Reed | 2,906,320 | September 29, 1959 |

Young (1) discloses an upholstery supporting mat comprising a number of units sewed together. Each unit comprises a sheet of fabric with reinforcing wire strands drawn therethrough. The wires are in parallel relation to each other and are disposed lengthwise of the cushion assembly. The ends of the wires overlie the sheets and are clamped around flexible nonresilient cords or tie members. The patent states that "these parts are fixedly secured together, and there is no slipping of the strands on the tie members." The strands terminate in spaced relation to the edges of the sheets of fabric providing edge flaps. It is stated that "the reinforcing strands are so spaced that a plurality of them extends across the top coil of each spring"; the mat construction "is readily adaptable for use with other types of springs" including "bowed" or their equivalents and

is "very desirable for use in the smaller spring units such as automobile cushion springs, furniture springs and the like." The substantially continuous reinforcement of the mat is such "that the upholstery padding * * * cannot sag down between the springs."

Young (2) shows a somewhat similar mat for a seat cushion. The parallel wire reinforcing strands extend continuously over the length of the burlap sheet except for the end margins. The tie member is not disclosed as flexible. Young (2) states that his wire members "are designed to run from the front to the rear of the cushion." The solicitor points out, however, that

"Fig. 3 [and 5] clearly shows * * wire 43 woven through fabric 42 and crimped at its end about tie member 44. Judging from the section line 3–3 in Fig. 1, the wire members 43 are actually illustrated as extending longitudinally of the seat cushion, notwithstanding Young's statement to the contrary."

It is noted in this connection that Young (2) states that the "spring wire members may run from side to side of the cushion * * *." Young (2) shows his tie members secured to the spring assembly border member by clips as similarly shown by appellants.

Shockey shows reinforcing wires for the mat of the upright back of an automobile seat. The wires are not woven through the mat but may be attached to the mat by "stitching or the like." Thus, the major portion of the wire overlies the surface of the mat in contact with the padding.

Reed discloses a wire-reinforced upholstery spring mat designed for an automobile seat having curved ends. The wires are in parallel relation and vary in length to conform to the arc of the seat. The wires are helices spun or screwed through the fabric. It is stated that "the helical reinforcing strand portions or sections are less likely to bend or kink over the upholstery springs than are the straight wire sections which are commonly used."

The examiner rejected claims 1–6 as unpatentable over Young (2) in view of Young (1), Reed and Shockey, expressing the view that it would be obvious to modify the insulator sheet of Young (2), adaptable to a rectangular cushion, to fit a cushion with rounded corners by varying the length of the wire strands therein as taught by the varying length strands in the rounded corner cushion of Reed. The examiner pointed out that Shockey shows his wires extending a substantial distance beyond the intermediate "woven portion" of his sheet and that it would not be unobvious to further modify the sheet and end wires of Young (2) by extending the end unwoven portions of the wires a "substantial" length at both ends of the woven portion of his sheet. The examiner further noted that the wires of Young (2) extend beyond the woven portion of his sheet speculating that the amount of the extension might well be a "substantial" distance as required by the claims. He also noted that appellants disclose an alternate embodiment of their invention with wires woven through the sheet without any additional lengths of unwoven wire, "which is very close to the weave pattern shown in the insulator sheet of Young (2)"; that it would be "within the expected skill of the art" to substitute for the resilient member of Young (2), to which the ends of his wires are clamped, the pliant cord members of Young (1) which are clamped by wire members and to substitute for the coil springs of Young (2) "the old and well known arcuately curved zigzag springs."

The examiner rejected claims 7 and 8 on "Young [1 and 2] and Reed" for the reasons applied in the rejection of claims 1–6.

The board regarded the two features relied on for patentability as:

"(1) the varying length of the strands whereby a mat suitable for a curved or other nonrectangular contour is formed; (2) the substantial length of non-interwoven strands at both ends of the mat."

As to (1), the board held, in agreement with the examiner, that the reinforcing members of varying length so that a mat may be provided for a seat of curved contour, as shown by Reed, would suggest to one skilled in the art that reinforcing wires of varying length could be used in either of the two Young structures for the same purpose.

As to (2), the board stated that it did not consider the examiner in error in the application of Shockey to show this feature. The board was of the opinion that:

"* * * as broadly claimed this feature is shown in the Young patents. The claim language * * * is expressed as 'portions of the strands of substantial length.' 'Substantial' is of broad and indefinite meaning which, in our opinion, does not patentably distinguish over the end portions of the Young patents which extend from the last interwoven portion to the cords to which the wires are attached."

Appellants contend that the board committed error in holding that the "substantial" length of the unwoven ends of the reinforcing wires was indefinite and not patentably distinguishing in the claims. It is argued that the "substantial" length of said ends are comparative to the "major intermediate portions" woven into the sheet and that it connotes "at least several times the length of the * * * woven parts of the wires on one side of the fabric."

We find merit in the solicitor's response to this contention. "Several stitch lengths" or "several times the length of the woven parts of the wires" is a nebulous and indefinite base or standard of comparison. Other standards may well be just as apt. Appellants' disclosure, as pointed out by the solicitor, "does not insure a definite threshold or lower limit for 'substantial,'" nor is there any disclosure that the unwoven ends of the wires are critical for any purpose. In this connection it is noted that appellants' specification does state that:

"The free ends of the strands or the ends of the fabric being free from the ends of the strands permit and facilitate the assembling manipulation so that the clips may be positioned as desired and at the same time the unwoven ends of the strands are effectively supported and effectively support the upholstery superimposed thereon."

We note, however, that Young (2) discloses "free ends of strands" which, in our view, would "facilitate the assembling manipulation so that the clips may be positioned as desired." It is further noted that Young (1) shows direct securement of the fabric to the edge of the spring assembly while the claims at bar fail to mention any securement of the mat to the spring assembly.

As we pointed out in our analysis of the examiner's treatment of the instant matter, appellants' alternate embodiment shows wires woven through the sheet without any additional lengths of unwoven wire. We agree with the solicitor that this factor militates against any disclosure of criticality for additional lengths of unwoven wire.

In support of the alleged new function of appellants' structure, it is asserted that abrasion between the padding and the metal springs is minimized by reason of the substantial length of the unwoven ends of the reinforcing wires in that they provide runners or smooth rail-like supports that permit the padding to yield and slide longitudinally under the forces applied upon entering or leaving compact cars.

Since the application does not specify that the ends are of a length sufficient to provide that advantage and the term "substantial" does not inherently require such a length, we do not find that argument convincing.

We do not deem it necessary to analyze further the cited references in relation to their applicability to comprehensive claim 1. Suffice it to say that we are of the opinion that one of ordinary skill in the subject art with the references before him, at the time of the

claimed invention, would find it obvious to create the structure here claimed by appellants. We agree with the board that claim 1 is dispositive of the other claims and with the solicitor that appellants' claims represent no more than an assemblage of old spring cushion features in an obvious manner.

The decision of the Board of Appeals is affirmed.

Affirmed.

SMITH, J., took no part in the decision of this case.